

**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**AMENDED COMPLAINT $75**
**February 24, 2023 14:44**

By: JOSEPH BANCSI 0025450

Confirmation Nbr. 2785549

RANIA ASSILY

      vs.

CUYAHOGA COMMUNITY COLLEGE DISTRICT  ET
AL

CV 22 958137

**Judge:**  STEVEN E. GALL

**Pages Filed:**  60

Exhibit B

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

**RANIA ASSILY**
c/o Joseph Bancsi, Esq.
The Suburban West Office Building
20800 Center Ridge Road
Rocky River, Ohio 44116

   Plaintiff,

  vs.


**CUYAHOGA COMMUNITY COLLEGE DISTRICT**
C/O Alexander Johnson, President
District Administrative Offices
700 Carnegie Avenue
Cleveland, Ohio 44115,

   And


**ALEXANDER JOHNSON**
Individually and as an employee
Of Cuyahoga Community College District
District Administrative Offices
700 Carnegie Avenue
Cleveland, Ohio 44115

   and

**KIMBERLY JOHNSON,**
Individually, and as Employee Of
Cuyahoga Community College District
As Assistant Dean of Academic Affairs
And Assistant Dean Of Learning and Engagement
Eastern Campus
4250 Richmond Road
Highland Hills, Ohio 44122,

**CASE NO.** CV-22-958137

**JUDGE STEVEN E. GALL**


**<u>AMENDED
COMPLAINT</u>**

**(With Jury Demand)**

Exhibit B

and

**VINCENT BRILEY**
Individually, and as Employee Of
Cuyahoga Community College District
As Assistant Dean of Learning and Engagement
Metro Campus
2900 Community College Avenue
Cleveland, Ohio 44115,

and

**DERRICK WILLIAMS**
Individually and As Employee Of
Cuyahoga Community College District
As Professor of Speech Communication
Metro Campus
2900 Community College Avenue
Cleveland, Ohio 44115,

and

**MEGAN ESTES**
Individually and As Employee of
Cuyahoga Community College District
As Director of Equity Compliance, Title IX
District Administrative Offices
700 Carnegie Avenue
Cleveland, Ohio 44115,

and

**BENJAMIN SMITH**
c/o Freedom Prep High School
Brownlee Campus
817 Brownlee Road
Memphis, Tennessee 38116,

Defendants.

Exhibit B

## AMENDED COMPLAINT FOR BREACH OF CONTRACT, VIOLATION OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION, DAMAGES,  INJUNCTIVE, AND OTHER RELIEF

## WITH JURY TRIAL DEMAND

Now comes Rania Assily, Plaintiff, by and through counsel, pursuant to order of the Court, dated February 15, 2023, and hereby amends and clarifies a portion of the Complaint, being Claim II, and hereby incorporates the attached Exhibits to her Complaint as if fully attached hereto.

### Jurisdiction and Venue

1.      The actions of Defendants, subject of the claims of Plaintiff, Rania Assily, took place in the State of Ohio, in the County of Cuyahoga, and across the United States utilizing the world internet and cyber communication media, all causing the alleged injuries and damage to Plaintiff, Rania Assily, and subject them to the jurisdiction and venue of the Cuyahoga County Court of Common Pleas,

Ohio.

2.      The actions of Defendant, Benjamin Smith, who is believed to be a resident of the State of Tennessee, and the subject of the claims of Plaintiff, Rania Assily, against him, subject him to the jurisdiction and venue of the Court of Common Pleas of Cuyahoga County, Ohio, for his utilization of the world wide web and cyber communication medias and social platforms, to disseminate and publish throughout the United States, including in the State Of Ohio, and Cuyahoga County,  libelous and defamatory material causing injury

and damage to Plaintiff, Rania Assily, in the State Of Ohio and Cuyahoga County, pursuant to the provisions of Ohio Revised Code, Sections 2307.382(A)(1)(4) and (6).

## The Parties

### Plaintiff, Professor Rania Assily

**3.**     Plaintiff, Rania Assily, is an Arab-American woman of Palestinian ethnicity and descent, a citizen of the State Of Ohio, and an owner of real property in Cuyahoga County, Ohio.

**4.**     Plaintiff, Rania Assily, (herein after referred to as "Professor Assily") at all times relevant hereto was Assistant Professor of History, at the Westshore Campus of Defendant, Cuyahoga Community College District (At times also referred to herein as "TRI-C"), pursuant to written contract, a copy of which is attached hereto as **Exhibit A,** which incorporated the Policies of Defendant, Cuyahoga community College District, certain portions of same are attached as **Exhibit B**, and the collective Bargaining Agreement between Defendant, Cuyahoga Community College District, and The American Association of University Professors (AAUP) Cuyahoga Community Chapter, a copy of which is attached hereto as **Exhibit C**, all of which constituted the contract of employment between Professor Assily and Defendant, Cuyahoga Community College District.

**5.**     In addition, Professor Assily was the Faculty Coordinator of History, Political Science, World Geography, and Urban Studies, at the Tri-C Westshore Campus.

**6.**     Professor Assily has been a professor at Defendant Tri-C for the past 5 years and has performed her duties at Tri-C without any blemish upon, or complaint from anyone, on

Exhibit B

her record, until January 12, 2021, when, without cause, her reputation was besmirched and her academic freedom of speech was denied and became subject of punishment, and her employment at TRI-C was attacked by Defendant, Kimberly Johnson, daughter of Defendant, Alexander Johnson, and others as set forth herein.

7.    Professor Assily has been nominated for The Ralph M. Besse Excellence In Teaching Award by her students for each  three years in a row.

8.    The Ralph M. Besse Excellence In Teaching Award is presented annually for up to four full time faculty members selected for exceptional professional competence and commitment to helping students to succeed.

9.    Professor Assily has been well received by the student body which is composed of all races, religious creeds, ethnicity, and gender. She has received laudatory notes and praises from her students and former students, including, as an example, the most recent ones:

3/12/ 2021 8:14 P.M.

"I want to Thank you for all that you have done for me in these past 8 weeks. You are a Joy to listen to. You have a wonderful spirit, and you really care about your students. You have even taken time out of your days to talk with your students, make us feel confortable and give us words of encouragements. I will truly miss having a Professor like you. I will absolutely miss you. I don't usually send emails to my Professors like this, but I felt the need to tell you what you mean to me. Thank you much and hopefully this isn't goodbye☺ Be blessed!"

3/15/2021 9:14 AM

"Very interested class, I really enjoyed it you are a great professor, you were always there when I needed help Thanks so much!!!!"

5/25/2021 8:23 PM

Exhibit B

"I just wanted to say thank you. I absolutely loved this history class! I chose this course because I really enjoyed your History of Civilization class in 2019 that you taught as well. You are very professional and made the course enjoyable. And that is why I took another course that you taught.

"This was my final semester at Tri-C. I will have my Associates in Liberal Arts and will graduate this month. But I did want to just say thank you again for all that you did. Being in my 30's and going to college wasn't ideal, but instructors like you made it easy and enjoyable to learn. I HATED history in high school and had no interest in it.  But you changed that opinion and now I LOVE history!

Again, thank you so much. I will remember you!"

May 25, 2021, at 10:13 AM to Claire McMahon, Robert Searson, Terri Pope (Excerpts)

"I commend Professor Assily for her ability to maximize the learning process while at the same time fully engaging her student through interaction, questioning and encouraging respectful open discussion. Even as an older student, Professor Assily made me feel fully accepted and respected, as she did with all of the students.

I found Professor Assily"s  teaching style to be professional and yet personal as if we were learning from a friend.

This Professor is a credit to CCC in all ways. She is bright, personable, respectful, and has the ability to relate to younger and older students. I would highly recommend any of her classes to any age group…Please convey my appreciation to Professor Assily and exgtend to her my sincere gratitude for a job very well done."

10/4/21, at 6:07 PM

"Good evening. Loved your Hist1010 class, your teaching is awesome. You do a great job telling stories and elaborating on the nuances of the course material.  The course was most intriguing, I read and wathc everything I could to the best of my abilities.

Be well and thank you so much for a great experience at Tri-C!"

12/6/21, at 11:53 AM

"I wanted to thank you for making this class as interactive and engaging as possible. I know you were/are worried that being virtual does not match and have the same energy as in person but I think you did a great job making in (it) collaborative. So, I thank you for that !"

**10.**     Professor Assily during her academic tenure has served in multitude of capacities-

as instructor and coordinator of History, Political Science, Geography, and Urban Studies

Exhibit B

and taught courses, including but not limited to the following: U.S. History-New World to The Civil War; U.S. History-Reconstruction to The Present; World Civilization-From Beginning of Civilization to 1,500 A.D.; Islam and Modern Middle East; American National Government.

**11.**     At other teaching positions at Notre Dame College and Lorain community College, Professor Assily taught courses in: African American Heritage; History of India; Western Civilization;  Islam to Nationalism; U.S. History I and II, World civilizations I and II.

**12.**     Professor Assily has been a presenter for community lectures and panel discussions and debates on a variety of public educational and other topics of public concerns, such as:

-       Web Ex presentation: "A conversation with Honest Abe", TRI-C, September, 2020;

-       Lecture at TRI-C; "Constitution for Constitutional Day", September 19, 2019.

-       Hosted "Exploring The Syrian Refugee Crisis….October 23, 2019;

-       Hosted "Raymond Towler, A Story of Wrongful Conviction…." October 10, 2017.

-       Most recently, Professor Assily will participate in a two day upcoming program, in Cleveland entitled "Frederick Douglass Speaks On Democracy".

**13.**     Professor Assily actively searched out and provided oral history for her students including working with The Cleveland Municipal Court Veterans Treatment Docket and Program to have our veterans relate their stories, traumas, and experiences throughout the past historic decades.

Exhibit B

14.     Professor Assily at TRI-C has implemented academic course lectures and learning outcomes for both domestic and international students in her world history courses to ensure academic retention of students.

15.     Professor Assily has worked, and is working, tirelessly for all her students, teaching them to think critically about various topics of World History and American History, and to become well educated model citizens in their future life and to achieve their life goals.

16.     Professor Assily has always taught with integrity, passion, and purpose, with all-consuming drive and belief that a sound education for her students is a pathway to success and a key for them to obtain their life goals and aspirations.

17.     Professor Assily, as an Arab-American woman, who experienced discrimination and hateful treatment, is an ardent believer in the American legal system and the protections it provides for all person, including the protection provided by the United States Constitution and its Amendments, and the protection provided by The First Amendment and of academic freedom in her chosen field and life work as an educator and as a Professor at The Cuyahoga Community College District, an Ohio State public institution of higher learning.

18.     Professor Assily's professional exemplary career came to a screeching halt on January 12, 2021, by the conduct of Defendants, who attacked, slandered, libeled, marginalized, isolated, shunned, and minimized, her on campus, and sought her removal from TRI-C, and through systemic racism denied her First Amendment Constitutional Right to academic freedom of speech, as more fully set forth herein.

Exhibit B

### The Defendant, Cuyahoga Community College District, a.k.a. TRI-C

**19**.      Defendant, Cuyahoga Community College District, also known as TRI-C,  herein after  be referred to as "TRI-C", is an Ohio governmental body and state actor, providing public post-secondary college education and is public educational institution.

**20.**      TRI-C is predominantly funded by Ohio State taxes and funds, including property taxes paid by property owners of Cuyahoga County, and Federal funding such as the recent $41,645,625.00 Stimulus payment it received, which is providing to all, regardless of race, sex, ethnicity and gender, a public college education, having been established as an Ohio Non-Profit Corporation, Incorporated on November 3, 1961, Charter No. 15883, by the resolution of the Cuyahoga County Board of Commissioners, a copy is attached as **Exhibit D.**

**21.**      Defendant, TRI-C, and its state governmental employees, as set forth herein, have a duty to Plaintiff, Professor Assily, to protect and not to attack and destroy Professor Assily's First Amendment right to free speech and to academic freedom.

**22.**      Defendant, TRI-C, and its employees have a duty to be beacons of intellectual diversity and academic freedom, to be a forum where controversial ideas are discussed and debated, and not to stifle debate by picking sides, not to create a culture that mandates adherence to a specific or  limited ideology or thought.

**23.**      Defendant, TRI-C, has a public and state interest and mission to create and protect an atmosphere of higher education, an intellectual marketplace where unpopular, controversial, and at times, even offensive speech can be expressed, with wide exposure to the robust exchange of ideas which discovers the truth out of multitude of tongues from

members of multitude different races, creeds, and ethnicities, and persons of gender; where the professors, members of a learned profession can speak and write of all sorts of topics and in all source of settings, be free from authoritarian selection and institutional censorship or discipline.

24.     Defendant, TRI-C, as a governmental institution has a high duty to protect the individual professors to be free from state conduct encroaching upon their protected rights by the First Amendment of the United States Constitution, and applied by the Fourteenth Amendment and the protected rights contracted by the professors with Defendant, TRI-C.

25.     Defendant, TRI-C, and its administrative employees and others representing it, have the duty and responsibility to respect and seek to understand the viewpoints of others, though they may not be their own, or may conflict with their core values.

26.     Plaintiff avers, as more fully set forth herein, that Defendant, TRI-C, through its administrative, managerial, and teaching employee Defendants, breach its duties, and their duties, and it and they are liable to Plaintiff, through their actions which are exceptions to their governmental immunity and protection.

27.     Defendant, Tri-C, and its employees, as an academic institution of higher learning is vested with the duty to create an academic  space and forum where different ideas could compete in an atmosphere of spirited  tolerance, curiosity, and open mindedness where students are exposed to competing points of view, free from social conformism and censorship.

28.     Defendant, Tri-C, and its employees, are vested, by contract and constitutional principles, to protect and safeguard the First Amendment rights of its faculty staff to

Exhibit B

academic freedom of speech in an atmosphere which fosters a robust debate of issues of public concerns.

**Defendant, Alexander Johnson**

**29.**     Defendant, Alexander Johnson, is the President and the highest ranking state employee, and administrative Officer of Defendant, Cuyahoga Community College District, who is charged with the highest duty and responsibility of and to foster and protect a culture in conformity with the forgoing principles and the protection of robust debate of issues of public concern.

**30.**     Plaintiff avers and believes that Defendant, Alexander Johnson, an African-American, during his tenure as President has created, sponsored,  promoted, and sanctioned an underlying culture at TRI-C which is an  antithesis of the duty of Defendant, TRI-C, to protect academic freedom and the First Amendment rights to free speech, and thereby, thru and with the active  support and participation of state  employees as set forth herein, including, Defendants, Kimberly Johnson, Vincent Briley, Derrick Williams, Meghan Estes, and others has violated the  rights of Plaintiff, Professor Assily, and caused damages to Plaintiff, as more specifically set forth herein.

**31.**     Culture of TRI-C during Defendant, Alexander Johnson's, leadership, with  his governmental imprimatur, created and fostered a culture and academic  atmosphere at TRI-C which espoused, promoted and sanctioned  only a one sided, biased and prejudicial point of view  on issues of great  public concern and debate, without opportunity to discuss and debate which created and picked sides, as either you are with us and our thinking, or if you

11

Exhibit B

express speech with which we do not agree with, or we claim is offensive, you don't belong at TRI-C,  have no place at TRI-C and should be silenced at  and/or banished from TRI-C.

**32.**     This  culture  of  TRI-C  was  aggressively  advocated  by  Defendant,  Kimberly Johnson, whose desire was to banish Professor Assily from TRI-C, as set forth herein.

**33.**     The current culture of Defendant, TRI-C, created a class which is now akin to what is described as the "New Puritans" (**Exhibit E)** with their biased thinking and censorship, with  the  attending  and  consequential  damage  to  members  of  academia,  including  to Professor Assily.

**34.**     The current culture, specifically espoused, by the state employees of TRI-C, with the *imprimatur* of Defendant, Alexander Johnson*,* as more specifically set forth herein, that systemic,  structural,  or  institutional  racism,  accounts  for  almost  all  disparities  between races, whether in education achievement, employment rates, income gaps, crime rates and health. Individual behavior, family structure, perverse governmental policies and culture have little or nothing to do with such disparities….and to contend otherwise is itself a manifestation of systemic racism.

**35.**     As a consequence, few are willing or dare to speak out  or to write an alternate or qualified  view  or  nuance  "for  fear  of  being  labeled  racists,  getting  canceled  and/or becoming unemployed." *Peter N. Kirsanow,* an African-American, Commissioner of The United States Commission on Civil Rights, and Member of the National Labor Relations Board.

36.     As it will be set forth herein, Professor Assily dared to speak out and write a nuance or view otherwise, in the protected environment of academic freedom upon an issue a great public interest and concern.

37.     The view expressed by Professor Assily, as will be set forth herein, is shared by President Barak Obama, and including Defendant, Derrick Williams, and other African-Americans.

38.     Defendant, Alexander Johnson, violated and failed to carry out a known clear duty to its faculty member, Professor Assily, and violated his duty to protect the academic freedom of speech and expression guaranteed by the First Amendment of the United States Constitution as applied to state and governmental action by the Fourteenth Amendment to the United States Constitution.

## Defendant, Kimberly Johnson

39.     Defendant, Kimberly Johnson, is joined individually, and as a governmental state employee and an administrative officer of TRI-C, as an Interim Assistant Dean of Learning and Engagement, Eastern Campus of Defendant College,  and  in April 2021, promoted to Interim Assistant Dean of  Academic Affairs, Eastern Campus of TRI-C.

40.     Defendant, Kimberly Johnson, is an administrative state employee, and  does not hold any academic teaching position with Defendant, TRI-C, or as a faculty member, and does not enjoy the protections afforded by  contractual Agreements of Professor Assily with TRI-C and the academic freedom of speech protections of the First Amendments of the United States Constitution.

41.     Defendant, Kimberly Johnson is an African-American.

42.     Defendant, Kimberly Johnson, together with Defendant, Alexander Johnson,  and other state employees,  has violated a known clear duty owing to Professor Assily by TRI-C, as aforesaid.

43.     Defendant, Kimberly Johnson, is the daughter of Defendant, Alexander Johnson, an employee and President and Chief Reporting Officer of Defendant, TRI-C.

44.     Plaintiff avers that Defendant, Kimberly Johnson, has acted (1) with  intentional deviation from her clear duty and purposefully did and doing acts with knowledge and appreciation that they would likely result in injury to Professor Assily, and with failure to exercise any care toward Professor Assily which resulted in harm to Professor Assily, making Defendant, TRI-C liable for  her actions,  and (2) acted with malice, malicious purpose, in bad faith, motivated by malice, and harboring ill will toward Professor Assily disseminated and published libelous and defamatory information to members of the academic community of TRI-C, and others, to do harm and injury to Professor Assily, making her liable individually and personally, for compensatory and punitive damages..

**Defendant, Vincent Briley**

45.     Defendant, Vincent Briley, is joined individually and as an administrative state employee of Defendant TRI-C, as Assistant Dean of Learning and Engagement, Metro Campus, of TRI-C.

46.     Defendant, Vincent Briley, is an African-American.

47.     Defendant, Vincent Briley did not hold a position with Defendant, TRI-C, as a faculty member, with any of the protections of the contractual Agreements as between

Exhibit B

Professor Assily and Defendant, TRI-C, and right of academic freedom afforded by the First Amendment of The United States Constitution.

**48.** Defendant, Vincent Briley, had the duty to protect the First Amendment academic freedom of speech rights of Professor Assily, rather than attack Professor Assily, as set forth herein..

**49.** Defendant, Vincent Briley, is believed to be also a relative or family member of Defendants, Alexander Johnson and Kimberly Johnson, and was the first attacker of Professor Assily on January 12, 2021, and the "first cause" of the continuous attacks to silence and to censor Professor Assily.

**50.** Defendant, Vincent Briley, did not co-operate with the investigators hired by Defendant, TRI-C, and the investigators did not require his co-operation and did not investigate is conduct, as more specifically set forth herein.

### Defendant, Benjamin Smith

**51.** Defendant, Benjamin Smith, was an external visitor and a business invitee of Defendant TRI-C, on January 12, 2021, by employee, Defendant, Derrick Williams.

**52.** At all times relevant hereto Defendant, Benjamin Smith, was an employee of the KIPP Memphis Collegiate High School, as Dean Of culture, a secondary educational institution, in Memphis Tennessee, then later as Dean of Academics of Freedom Prep High School, Memphis, Tennessee, an African-American educational institution.

**53.** Defendant, Benjamin Smith, is African-American.

Exhibit B

54.     Defendant, Benjamin Smith, was not a faculty member of TRI-C, and was not protected by the right of academic freedom of speech guaranteed by the First Amendment of the United States Constitution for his conduct as set forth herein.

55.     Defendant, TRI-C, is liable for all the wrongful acts of Defendant, Benjamin Smith, a business invitee, toward Professor Assily.

56.     Defendant, Benjamin Smith, is joined for causing injury and damage in the State of Ohio, and by cyberspace distribution and publication of defamatory matter through social media throughout the United States including the State of Ohio and Cuyahoga County, Ohio.

### Defendant, Derrick Williams

57.     Defendant, Derrick Williams, is a professor of Speech Communications, on The Metro  Campus of TRI-C.

58.     Defendant, Derrick Williams, is African-American.

59.     Defendant, Derrick Williams, actively shared the views of Professor Assily that she expressed on January 12, 2021, which he hypocritically, denounced when spoken by Professor Assily, as more specifically set forth herein.

### Defendant, Meghan Estes

60.     Defendant, Meghan Estes, at all times relevant hereto, was an employee of Defendant, TRI-C, in the Human Resource Department, as Director of Equity compliance, Title IX.

61.     Defendant, Meghan Estes,  violated her duties to Professor Assily, and failed to accord her access guaranteed by contractual and other rights to redress Professor's

grievances with a full knowledge and understanding that her denial would cause injury and damage to Professor Assily, as more specifically set forth herein.

62.     Defendant, Meghan Estes, as more specifically set forth herein, has treated Professor Assily differently, then Defendant, Kimberly Johnson, the daughter of Defendant, Alexander Johnson, denied Professor Assily equal protection of the laws, and only advanced and  protected  the interests of Defendants, Kimberly Johnson and Derrick Williams.

### THE FACTS

63.     Defendant, Tri-C, through its employees, and staff, including but not limited to same, to employees  Defendants, Alexander Johnson, Kim Johnson,  Vincent Briley, Professor Derrick Williams, and his invitee, Defendant, Benjamin Smith, breached its duty to protect the academic freedom of speech of Plaintiff and maintain an environment for the free exchange of ideas, as aforesaid, and violated its contractual obligation to Plaintiff, Professor Assily, and  encouraged and actively thwarted and destroyed her constitutional rights, on and after January 12, 2021 to the present.

64.     Defendant, TRI-C, has  replaced its duty to protect free speech and academic freedom, fostered and is fostering a " cancel culture" and wokeism, a social culture that is spread throughout the academic community in the country, and seeps and flows like lava from an eruptive volcano of hate and anger covering the Tri-C community and destroying the constitutional rights of Professor Assily, and only protected the "comfort" and narrow mindedness and bigotry of its employees, who hold a view that only an African-American can express any criticism of the "black culture" and predicament.

65.     On January 12, 2021, Defendant, TRI-C, conducted a College wide" Colloquium" via Web Seminar, as a government sponsored event,  and inviting members of the public and members of any and all academic communities.

66.     Attendance of the members of the faculty of TRI-C, including Professor Assily, was **compulsory** at said Colloquium.

67.     The medium of the Colloquium was an audio and video web seminar with a written chat-room. At the end of the audio and video presentation, a verbal audio answer and question period followed for the attendees.

68.     Plaintiff believes and therefore avers that The Colloquium and the question and answer verbal and audio portions were recorded in an audio version, by TRI-C, and TRI-C did possess or had available a video and audio recording.

69.     The protocol of the verbal Question and Answer portion was that "If you (members of the audience) have any questions during the presentation, please ask them here (chat room) and I will make our presenters aware of the question." Nancy Doherty, please see chat room Transcript. **Exhibit F**.

70.     One of the segments of the Colloquium was conducted by Defendant, Derrick Williams who as an employee of TR-C invited external persons, Defendant, Benjamin Smith, and Jovan Gatherings to speak with him as a co-presenter at said Colloquium.

71.     Plaintiff, Professor Assily attended the compulsory Colloquium, but did not have intentions of asking any questions or to speak up, but to listen attentively to what was being said.

Exhibit B

72.     During a segment conducted by employee Defendant, Derrick Williams, and the two external presenters, Defendant, Benjamin Smith, and Jovan Gatherings, all African-American, said that "**they were not going to look at people as individuals, but rather as groups and that the intention was to explain how different groups experience life in America differently and that some groups are more privileged than others**".

73.     Relevant to this topic and view, Professor Assily at about 11:28 AM, dared and raised a written comment in the "chat room" in compliance with the protocol set by Nancy Doherty, which was not audible to the presenters, and who were not aware of her written comment.

74.      Professor Assily typed in the written "Chat-Room" the following comment:

        "**You mentioned we won't be looking at individuals. Once we take the individual out of the equation, we now blame society or the system which is always broken. The individual is the marker of American democracy as it enables individual choice making. What role do poor choices and poor decision making play in current economic problems. Perfect example, Clarence Thomas, who grew up in the segregated South and now is a Supreme Court justice.**"

75.     After the Presenters brought up family dynamics, Professor Assily dared to suggest that focus should also be to:

        "…**family dynamics. What role does the lack of father figure and role model play in family dynamics? Children need strong fathers in the family are proof of ensuring successful young men and women as fathers form and affirm the identity of young children. Why not focus on this psychological issue as well?**"

**76.**     Professor Assily dared to raise these issues regarding black culture which the employees and members of the TRI-C did not like to hear, believed such statements were taboo at the college, and not in line with their thinking and beliefs.

**77.**     Professor Assily dared to raise an issue of great public concern regarding an issue of the black family dynamics, an issue which has been expressed by none other than President Barack Obama.

**78.**     President Barack Obama in a Father's Day Speech, on June 15, 2008, said as follows:

> **"But if we are honest with ourselves, we'll admit that what too many fathers also are is missing-missing from too many lives and too may homes.  They have abandoned their responsibilities, acting like boys instead of men.  And the foundations of our families are weaker because of it.**
>
> **You and I know how true this is in the African-American community.  We know that more than half of all black children live in single-parent households, a number that has doubled-doubled-since we were children. We know the statistics-that children who grow up without a father are five times more likely to live in poverty and commit crime; nine times more likely to drop out of schools and 20 times more likely to end up in prison. They are more likely to have behavior problems, or run away from home or become teenage parents themselves. And the foundations of our community are weaker because of it."** (Emphasis added) (Full text attached as **Exhibit G)**

**79.**     President Obama was not labelled as "**racist**" or a "**white supremacist**" for expressing these concerns.

**80.**     Professor Assily dared to utter the very beliefs of Defendant, Derrick Williams, who worked in a mentoring program to address the number of absentee fathers in his son's elementary school in Cleveland Heights, Ohio. A copy of the Cleveland Plain Dealer Article entitled "*Noble Gents to Gentlemen"*, is attached as **Exhibit H.**

81.    Defendant, Derrick Williams, hypocritically, did not call himself a **racist and a white supremacist.**

82.     Thereafter, in a the Chat-Room a written interchange ensued between Professor Assily and Defendant Kimberly Johnson,  from 11:36 to 11:45 none of which was known to the presenters, and none of which was audible and did not interrupt the presentation.

83.    The audio presentation ended at 12:00 Noon, Thereafter, a verbal audio discussion followed.

84.    Defendant TRI-C claimed that no audio recording exists of the discussions after the presentation in the question and answer period.

85.    During this discussion period Defendant, Vincent Briley, suddenly appeared on video opened to the entire viewing audience and started to attack Professor Assily stating that her comments in the chat room were in line with **racism and white supremacy.** Defendant, Vincent Briley, believed to be a relative or family member of Defendants, Kimberly Johnson and Alexander Johnson.

86.    Plaintiff believes and therefore avers that after the conclusion of the Colloquium there was immediate verbal and other communication among employees of TRI-C and defendants branding her a Racists and White Supremacist which were derogatory and defamatory to Professor Assily.

87.    The gossip mill and the voices to silence and malign Professor Assily immediately started through electronic and social media platforms, throughout the college and beyond with the use of college and personal electronic devices, with emails, text and internet platform postings, by Defendants and others, as more fully set forth at trial.

88.     Defendant, Benjamin Smith, during the afternoon of January 12, immediately, authored and posted from Cuyahoga County, Ohio before returning to Tennessee, an attack upon Professor Assily, by name and affiliation as a Professor at TRI-C, on his open public Facebook Page, as well to his 1,300 hundred Facebook "Friends"  publishing same throughout the internet.

Defendant, Benjamin Smith, wrote that:

"….**in time where conservative white supremacist remained dormant; they Are now finding the courage to be arrogantly overt about their beliefs. Rania Assily , a TRI-C history professor, used our session as an opportunity to reach into the bag of already disproven conservative rhetoric in order to shift our messaging to bend toward whiteness rather than injustice.**

It continued that Professor Assily's beliefs are **DANGEROUS AND SHOULD NOT BE ALLOWED ON A COLLEGE CAMPUS.** (emphasis added)

Defendant, Benjamin Smith's FaceBook Page post is attached hereto as **Exhibit I.**

89.     Defendant, Benjamin Smith, thereafter, in his Facebook as Reply to a comment wrote:  "**Come to find out I think the professor was at the insurrection last week sooo**". (See  **Exhibit I**)

90.     Defendant, Benjamin Smith and Defendant, Kimberly Johnson, within an hour of the Face Book posting, communicated, and Defendant,  Kimberly Johnson, composed and sent an email at 5:41 P.M. attaching the post and the libel of Defendant, Benjamin Smith, to  Dean Robert Searson, Dean of Academic Affairs, Westshore Campus, with copies to Terri Pope, President of the Westshore Campus, Lisa Williams, President of the Eastern

Exhibit B

Campus, and William Cunion, Dean of Learning And Engagement, Eastern Campus, which the recipients then may have forwarded to others further publishing and spreading it. (Attached hereto as **Exhibit J**)

91.     Defendant, Kimberly Johnson, in her email accused Professor Assily of:

-       "..making some comments that align with the rhetoric of those who believe that African Americans are fundamentally inferior"

-       that she also made some remarks over voice at the end of the session and engaged aggressively with the presenters. She said that African Americans underachieve because they aren't raised by "good people" and that she was presenting an "alternative viewpoint". She attributed the impacts of systemic racism to "poor choices" and "poor decision making".

92.     All while, as related to Defendant, Meghan Estes, as set forth herein, that **"she cried for hours",** and repeated and disseminated the defamatory attacks of Defendant, Benjamin Smith, that Professor Assily's **"beliefs are dangerous and should not be allowed on a college campus", and** lauded the attacks as **ELOQUENT,** and her comments are **"not in line with the College's culture and values"**

93.     On January 12, 2021,  Defendant, Kimberly Johnson, also forwards to Defendant, Derrick Williams, her email to Dean Searson attaching a the copy of the Facebook post of Defendant, Benjamin Smith with the note that "I enjoyed your presentation today…I didn't appreciate Prof. Assily's remarks".

94.     Then on January 13, 2021, defendant, Derrick Williams, forwarded Defendant, Kimberly Johnson's email to Magda Gomez, Director of Diversity and Inclusion. with

Exhibit B

copies to Defendant, Meghan Estes, and Shari Brazile, Manager of Labor and Employee Relations.

95.     On January 13, 2021, Magda Gomez, forwards the email of Defendant, Derrick Williams, to Meghan Estes, and Shari Brazile, Manager of Labor and Employee Relations, stating that "Bob Searson and others may have already approached our colleagues."

96.     Within 24 hours, Defendant, Kimberly Johnson, caused the dissemination of the defamatory remarks of Benjamin Smith and her own remarks to at least 10 high level administrators of TRI-C, and Plaintiff believes to dozens of unidentified members of the TRI-C Campuses, and other individuals, who may have also forwarded it to others.

97.     Defendant, Kimberly Johnson, and Defendant, Meghan Estes,  had immediate contact with each other on January 13, 2021, and had a discussion  and conversations on January 14, 2021, wherein Defendant, Kimberly Johnson related that she "cried for hours, couldn't concentrate and ruined her day" and her "emotional" version to the event of January 12.

98.     **No one** contacted, no one emailed, no one called, and no one reach out to Professor Assily, no member of the administration,  no faculty member, no deans, not Meghan Estes, **no one**, regarding how she was feeling and how she was hurt by the vicious attacks and how her professional reputation was being maligned.

99.     Defendants, Kimberly Johnson, immediately, on January 14, filed a formal complaint against Professor Assily, which was followed by Defendant, Derrick Williams' filing of a formal complaint on January 21.

Exhibit B

**100.**    Plaintiff believes and avers that Defendant, Kimberly Johnson, also had immediate accesses on January 12 to and did communicate with her father, Defendant, Alexander Johnson, President of TRI-C, verbally and electronically, regarding Professor Assily, and with her other family members and relatives, and that Defendant, Alexander Johnson, communicated with Defendant, Meghan Estes, and other employees of TRI-C, regarding her daughter's complaints.

**101.**    Finally, the following afternoon at 2:45 PM, Professor Assily was able to speak with Assistant Dean Claire McMahon, and tell her how offended she was by the racist attacks and Dean Clair McMahon recommended that **her colleagues should reach out to** Professor Assily.

**102.**    No one from the administration had reached out to Professor Assily to discuss the situation with her – including  Meghan Estes, Magda Gomez,  Shari Brazile,  Terri Pope, Bob Searson,  Lisa Williams,  Bill Cunion, and the other Defendants herein, Alexander Johnson, Kimberly Johnson, Derrick Williams, and Vincent Briley.

**103.**    Instead colleagues shied away from and avoided Professor Assily, and one colleague, on January 13, 2021, even rescinded her letter of support for Professor Assily's tenure application.

**104.**    TRI-C, through Defendant, Megan Estes, immediately acted upon and pursued the complaints of Defendant, Kimberly Johnson, daughter of the President, and Defendant, Derrick Williams.

**105.**    Professor Assily, since the Colloquium, reached out several times to find out if there was a recording of the session.

Exhibit B

106.    On January 13, at 8:12 P.M. Professor Assily emailed Gary Arnosk, Integration Technician At Westshore Campus, but has not received any response from him, and professor Assily believes that he was told not to respond.

107.    On February 1, Professor Assily again requested a copy of the recording of the Colloquium, from Kara DePaul, but has not received any response from her to this date.

108.    The treatment of Defendant, Kimberly Johnson, was different.

109.    Professor Assily, learned that on January 12, Defendant, Kimberly Johnson, reached out to Kara DePaul, for a recording of the session.  Karen DePaul immediately acted on her request.

110.    It was followed by an email by Defendant, Kimberly Johnson, sent to **all deans and presidents of TRI-C,** stating that "I asked Kara DePaul for a recording of the session, but it looks like it wasn't recorded. She said she can have ITS dig more deeply into it if someone indicates they wanted a recording or a transcript".

111.    No one at TRI-C, not Kara DePaul, not Gary Arnosk, not Defendant, Kimberly Johnson, not any of the deans, and not any of the presidents at TRI-C, shared this information with Professor Assily.

112.    According to TRI-C, Professor Assily was not "someone" who indicated they wanted a recording or a transcript.

113.    Isolation of Professor Assily on campus continued and  was continued to be attacked and called a holocaust denier a neo-nazi, neo-fascist, racist and white supremacist, and an as one  who does not belong at TRI-C.

114.    Long time colleagues stopped speaking to her and communicating with  her.

Exhibit B

115.    Finally, on January 14, 2021, Professor Assily was able to speak with Dr. Terri Pope, President of the Westshore Campus who told her that: "**civil discourse and varying opinions are not always embraced at the college**", that the "**college's prevailing decision is that we would never say anything that would give the impression of intolerance**", that "**people with conservative values need to 'quietly' demonstrate their values at the community college**", and that "**you are entitled to your own opinions, it is not the opinion of the college**".

116.    On January 15, 2021, Professor Assily had a telephone conversation with Robert Searson, Dean of Learning and Engagement, wherein professor Assily was told that "**it is hard to have  conversations with people who claim 'racism" and that as soon as they are able to tag you as a 'racist" or "white supremacist' they have given permission to the audience not to listen to you anymore**", that "**he was upset that we didn't model what should happen in an educational institution-'having civil discussion'**  that "**it is better to keep quite during the colloquium-have it on but do something else**" and that "**he acknowledged how the 'other' is silenced**".

117.    On January 20, 2021, Professor Assily reached out to Meghan Whitmore, Leave Administrator, to speak to her about her concerns and desire to have an informal meeting and discussion about the January 12th event. Professor Assily left a voice mail to that effect. Later, Megan Whitmore and Professor Assily did speak, and Meghan Whitmore said that she would relay her request to Meghan Estes and Shari Brazile, Manager of Labor Relations.

Exhibit B

**118.**    On January 21, 2021, at 10:56 A.M., Defendant, Meghan Estes, sent an email to Professor Assily, stating that "I was sent your voice mail from Megan Whitmore and wanted to follow up on concern you expressed to her about a situation that took place during faculty Colloquium. Can you let me know your availability to speak to me tomorrow (Friday/22) ?."

**119.**    On January 21, 2021, at 11:10 A.M. Defendant, Meghan Estes, sent an email to Professor Assily that 11:00 A.M. works.  I will set up a WebEx meeting if it works for you.

**120.**    On January 21, 2021, at 11:34 AM Defendant, Meghan Estes sent the WebEx invite which was accepted by Professor Assily.

**121.**    On January 22, 2021, at 10:53 A.M. few minutes before the scheduled meeting Professor Assily received notifications cancelling the meeting.

**122.**    Professor Assily immediately inquired of Defendant, Meghan Estes, about the cancellation.

**123.**    At 10:57 A.M. Professor Assily received an email from Meghan Estes that meeting was cancelled as the college is engaging an external investigator.

**124.**    After further inquiry by Professor Assily, finally, at 4:09 P.M.  received an email from Defendant, Meghan Estes, stating that "The Office of Institutional Equity has opened an investigation regarding what occurred at Faculty colloquium last week. The college has elected to engage an external investigator as part of the process. I do not have any additional information that I can share with you at this time."

**125.**    On January 25, 2021, Professor Assily, then being faced with defending an investigation and the attending legal costs, had a telephone conversation with Dean Robert

Exhibit B

Searson about her predicament.  Dean Searson told Professor Assily to "**back away, until her tenure was done WE DON'T WANT TO PUT KAREN MILLER AND ALEX JOHNSON IN SUCH A POSITION WHERE THEY FEEL PRESSURE FROM OTHERS THAT IT WEIGHS INTO THEIR DECISION.**" (Emphasis added).

**126.**    Karen Miller was the Executive Vice-President of Access, Learning & Success, and the person reviewing who submitted Professor Assily Tenure Portfolio to the Tenure Portfolio Committee.

**127.**    Defendant, Meghan Estes, violated the TRI-C grievance process for Resolving Allegations of Discrimination, Harrassment, Sexual Misconduct, Title IX and Retaliation, Policy 3354: 1-60-01, mandating that:

> **The Director of Institutional Equity/Title IX Coordinator or Designee will attempt to contact the reporter to review the Privacy of the process, amnesty (if appropriate), accomodations, Supportive measures, optioned for informal resolution if appropriate, And the investigative and adjudicative process for informal reports And formal complaints."**

**129.**    Defendant, Meghan Estes, knew the foregoing provisions and that to ignore them would cause injury and damage to the rights of Professor Assily.

**130.**    Defendant, Meghan Estes, Meghan Whitmore, and Shari Brazile, cancelled the meeting sent up for January 22, to discuss with Professor Assily her reported  concerns pursuant to the aforesaid mandate, and simply followed  the wishes of the "College" and the wishes of whoever may have dictated them to them, by simply ignoring them.

**131.**    Defendant, TRI-C, immediately engaged the law firm of Bricker & Eckler, as an external investigator, at tax payers expense and public funds.

132.    The law firm of Bricker & Eckler, and its three investigators, were not independent and unbiased, but only concerned about the complaints of Defendants, Kimberly Johnson and Derrick Williams, not of any of the concerns of Professor Assily, as further set forth herein.

133.    Professor Assily had to hire legal counsel to defend herself and to protect herself from the willful and malicious racist attacks upon her by Defendants.

134.    In the midst of total silence by TRI-C, the absence of any discourse and  discussion of the conduct of the Defendants toward Professor Assily, Defendant, Alexander Johnson, issued a "An Important Message", on February 1, 2021, which contained that "In recent weeks, we have witnessed-within our nation and our institution-the impact of  exercising rights without an equal measure of responsibility. Even as we champion freedom of speech, we cannot condone the perpetuation of stereotypes and misinformation or aggressive language that attacks or demeans others."

135.    The statement of Defendant, Alexander Johnson, apply describes the conduct of Defendant, Kimberly Johnson, who did not champion free speech, perpetuated as a stereotype,  used aggressive language toward, attacked, and demeaned Professor Assily: that her beliefs are dangerous; they should not be allowed on a college campus; that they were not in line with the college' culture and values; that she didn't belong on campus; lauding as eloquent speech the condemning of  Professor Assily  as daring to "finding the courage to be arrogantly overt about their (her) beliefs"; didn't appreciate her remarks; as a "dean" of an academic institution crying for hours; and that she  approved calling Professor Assily a racists and a white supremacists.

**136.**     Defendant, Kimberly Johnson's conduct was not examined by anyone at TRI-C, but, instead, Defendant, Kimberly Johnson, rewarded and promoted, and  spotlighted as a "Famous Employee" on the TRI-C WebSite.

**137.**     Professor Assily incur and paid for her legal expenses, to date, in excess of $20,000 from her personal income, and not from the public funds and tax payer dollars, as TRI-C's expenses were paid for the prosecution of the charges and investigation.

**138.**     Right at the inception of the hiring of the law firm of Bricker & Eckler, the law firm's bias appeared.

**139.**     Professor Assily requested an informal meeting to discuss an informal resolution by a dialogue with both sides.

**140.**     February 25, Professor Assily, emailed attorney-investigator, Joshua Nolan that she retained counsel.

**141.**     On March 28, 2021, Professor Assily received an email from attorney Joshua Nolan, stating that "Additionally, we have notified the complaints (sic) of your request to seek an informal resolution as permitted under the policy. It requires all parties to agree to an informal resolution. Here, not all of the parties would agree to the informal resolution process."

**142.**     Counsel for Professor Assily requested Joshua Nolan the list of the attendees at the Colloquium which was denied by TRI-C, yet made unsupported findings about them.

**143.**     Counsel for Professor Assily again repeated Professor Assily request for the video and audio recording of the Colloquium, and again denied by TRI-C.

Exhibit B

144. Counsel for Professor Assily continued to demand copies of the complaints and the transcript of the "chat room" from Defendant, Meghan Estes and attorney Nolan.

145. On April 1, 2021, at 12:04 P.M. attorney Joshua Nolan sent an email to Professor Assily, and her counsel that "if he did not hear back to set up an interview and that if I do not hear from you by the close of business on Monday, I will assume you do not wish to be interviewed in the matter. We will move forward with our factual findings and report to the institution."

146. At 2:14 P.M. counsel for Professor Assily by email responded to attorney Nolan's email stating that both Professor and he as her counsel will continue to cooperate with setting up an interview, but "**I must have a copy of the statements of the complainants and the transcript of the chat section of the conference. We already discussed this".**

147. Attorney Nolan responded that they can provide "access" to the documents but they first need to schedule available times to meet the following week. "While we work on making those documents available electronically, please let us know what days would work for you both next week".

148. Even though, documents can be sent in matter of minutes electronically, no documents were provided.

149. On **April 5, at 10:55 A.M.** counsel for Professor Assily, sent an email to attorney Joshua Nolan, advising that due to a personal conflict and an extensive hearing made it impossible for him to meet for an interview that week, and again stated "**As I advised you last week my client will continue to cooperate with your investigation and meet for your interview. But as I requested several times before, you need to provide me with**

the transcript of the chat and copies of statements of the complainants BEFORE the meeting".

**150.**    Attorney Nolan responded: "I got your message you left with our office. As I've stated, we will provide you and Professor Assily with "access" to the documents before the meeting.......**We are being asked to complete this investigation as soon as possible and I need a set of proposed dates this week."** (Emphasis Added).  The identity of the person "asking to complete the investigation as soon as possible" and the reason for the haste was not disclosed.

**151.**    On April 6, 2021, counsel for Professor Assily emailed a formal letter to attorney Joshua Nolan that,  *inter alia*, stated that:

" I don't know who is dictating that the meeting must occur this week or the sudden need to close it this week, **but it does not smack of fair play"**…..Your offer of an "access" to my client of documents before the meeting is not acceptable. She has the right to have those documents and the time to evaluate them and to respond to them at the meeting with your team…..I am also preparing an extensive Pre-Hearing Statement which cannot be completed without the documents requested…It is less than a 5 minute flick of the wrist task for your associates or paralegal to send those to me electronically. I do not understand your client's reluctance to produce them."

**152.**    It took two days until April 8, at 1:11 P.M. to electronically receive some of the requested documents as an attachment in a format which "**Per TRI-C request, the documents are not able to be printed or downloaded"** !

Exhibit B

153.    The investigators treated Defendant, Vincent Briley, believed to be a Johnson family member or relative, differently, by not insisting that TRI-C produce him for an interview when he did not cooperate, especially when he was the person who interrupted the presentation and called Professor Assily a "racist" and a "white supremacist", and by not demanding that the IT department of TRI-C produce the audio recording.

154.    April 15, 2021, an interview of Professor Assily lasting over 3 hours was had. During the interview counsel for Professor again requested a list of the attendees at the Colloquium which investigator Joshua Nolan said he will request it from TRI-C.

155.    No such list was provided by TRI-C.

156.    TRI-C, through Karen Miller, falsely asserted that Professor Assily was not cooperating with the investigation, as communications were held by Joshua Nolan and counsel for Professor Assily, and Karen Miller, **threatened retaliation to withdraw Professor's  the tenure portfolio and its review for consideration of tenure.**

157    . On May 18, 2021 Professor Assily filed her formal  Complaint submitted to Lillian Welch, Vice-President of Human Resources, against:

Alexander  Johnson,  President,  Megan  Estes,Employee,  Human  Resource Department, Benjamin Smith, External invitee, Kimberly Johnson, Employee, Vincent Briley, Employee, and professor Derrick Williams.

A copy of Professor Assily's Complaint is attached hereto as **Exhibit K**)

158.    To the date of the filing of this Complaint, Defendant, TRI-C, ignored Professor Assily's Complaint, and has not conduct any investigation of same, in sharp contrary to the

Exhibit B

speed with which the complaints of Defendants, Kimberly Johnson and Derrick Williams, were addressed.

**159.**    Bricker & Eckler, completed their "investigation" and issued its Report on July 2, 2021, which it submitted to Defendant, TRI-C, but not to Professor Assily.

**160.**    Professor Assily was notified by Defendant, Meghan Estes, on July 16, 2021, by letter stating that

> **The investigators assigned to this case found that the allegations did not Support a finding by a preponderance of the evidence that you violated The College's policy 3354-1-42-01 on Affirmative Action, Equal Opportunity, Discrimination and Harassment and the allegations did not support a Finding that you violated the College's Employee Code of Conduct".**

**161.**    Defendant, Meghan Estes, did not provide Professor Assily with a copy of The Report of the investigators.

**162.**    On August 19, 2021, counsel for Professor Assily emailed Defendant, Meghan Estes, and requested that she provide Professor Assily and her counsel with "a copy of the full and complete findings, decisions, and conclusion of the investigation by Bricker & Eckler".

**163.**    Counsel for Professor Assily, immediately, received a reply from Jason Carter, one of the attorneys from the legal department TRI-C stating that "I have been contacted by Meghan Estes regarding the investigation involving your client Rania Assily. The documents you are requesting are **not provided in connection with an investigation but, are subject to a public records request. I will treat your request as such and will have our office provide the documents to you in due course."**

Exhibit B

164.    On August 19, at 1:23 P.M., counsel for Professor Assily sent an email to attorney Jason Carter and educated him on who Professor Assily was and was not. "Since, Professor was the subject of the investigation and not a 'member of the public' she is entitled to a copy of the report….and that if you refuse to acknowledge Professor Assily's due process rights, the documents will be obtained not by a public records request but by a subpoena."

165.    The Report was immediate emailed to counsel for Professor Assily.

166.    After a full review of the Report which was entitled "**MEMORANDUM**" TO: Meghan Estes, Director Institutional Equity/Title IX Coordinator, **FROM:** Josh Nolan, Jeff Knight, and Kofi Semenya, all investigators, Bricker & Eckler, LLC, **DATE:** July, 2021, **RE: *Dr. Derrick Williams (Complainant), Dr. Kim Johnson (Complainant) and Rania Assily (Respondent)***, it is clear that it was not related to the **Complaint of Professor Rania Assily Dated May 18, 2021, Against Defendants, Alexander Johnson, Kimberly Johnson, Derrick Williams, Vincent Briley, and Meghan Estes** which has been ignored by Defendant, TRI-C to the date of the filing of this Complaint.

167.    The "MEMORANDUM" was not a product of an impartial review of the matter, but a subjective conclusion dictated and controlled by the powers and decision makers, as indicated hereinabove and herein, and as it will be more fully addressed at the trial of this cause.

168.    The "MEMORANDUM" completely exonerated Professor Assily, but failed to protect her right of freedom of speech and academic freedom.

169.    The "MEMORANDUM" described the substance of Professor Assily's written comments, as "in many ways they were poorly worded, reflected a general 'naiveté' and

in line with "ignorance". The same "poorly worded reflecting a general naivete and in line with ignorance" uttered by President Obama!.

170.    The "MEMORANDUM" then focused on the "tone" as interpreted by only four persons at the Colloquium, two of which were the external presenters, from a group of approximately 100 who attended, as "confrontational", "combative", "harmful and uncomfortable", "seeming aggressive", "aggressive and rude", and "unprofessional, angry, and rude".

171.    Since TRI-C is denying that there was an audio recording of the session, the "tone" of Professor Assily's verbal remarks cannot be but a subjective feeling or impression of only two members of academic community of TRI-C, and how Defendant, Kimberly Johnson, "felt" and that she "cried".

172.    The investigators and the members of TRI-C by focusing on the "tone" "stereotyped" and committed sexual discrimination and was prejudicial against Professor Assily by  adopting  the unfortunate and cruel stereo type of  women in the business and academic world, whose speech is assertive, firm, and spoken with conviction, and the same prejudice is still preventing women from breaking the "glass ceiling".

173.    Contrarily, when a man spoke in a "tone" as ascribed to Professor Assily he would not be stereotyped as rude, argumentative, confrontational, or combative, but strong, assertive, and forceful, all positive traits.

174.    A faculty colleague, described Professor Assily's voice as "clear and loud".

175.    Human beings are given a variety of voices with different tones, force and volume: *mezzo soprano, basso, tenor, soprano, contra tenor, contra alto, baritone, basso profundo,*

Exhibit B

*and in the past, castrati*; and their First Amendment right of free speech and academic freedom, cannot be evaluated or limited by such subjective and discriminatory stereotype casting and sexual discrimination.

176.    The "MEMORANDUM" and the members of TRI-C have stereotyped Professor Assily and discriminated against Professor Assily because of her sex and her God given tone of voice.

177.    Even though, Professor Assily was completely exonerated in the "MEMORANDUM",  the investigators, added the following conclusion, which plaintiff believes and therefore avers, was made to appease the "powers to be" at TRI-C", including Defendants, Alexander Johnson and Kimberly Johnson:

**"We recommend that she be provided with appropriate SUPERVISORY**

**SUPPORT to address the "lingering effects" (?) of this situation on the**

**academic Community at the College".** (Emphasis Added).

178.    This nebulous recommendation is a continued violation of Professor Assily's First Amendment Right to Free Speech and academic freedom.

179.    In essence, this conclusion placed Professor Assily's rights in a Petri dish under a microscope to be subjected to subjective and discriminatory surveillance and censorship by those who want her silenced and removed from the College, as aforesaid.

180.    On September 20, 2021, Professor Assily presented a session entitled "The Constitution: Then and Now" with Sergeant Daniel Kalk,, J.D., for the Student Success Week at TRI-C, to which, unbeknown to professor Assily, Defendant, Kimberly Johnson, attended alongside of attendees.

Exhibit B

**181.** The purpose of the session with Sergeant Kalk, J.D. was to expose and give a preview to the student body to the Constitution of The United States and to help build enrollment for the Constitutional Law Class commencing on October 25, 2021.

**182.** The start of the presentation was delayed for unknown reason, but prior to Professor Assily's video presentation went live, when the audio was live, one of the moderators stated "**And Nanche, we do have Kim Johnson joining us, she's in the main room**".

**183.** After the presentation, Professor Assily requested, several times, a complete copy of the entire audio recording of the event including the comment of the monitor regarding the presence of Kim Johnson.

**184.** An audio version of the event was finally provided to Professor Assily, but was not shared with faculty and students college-wide as was the custom, and the segment regarding Kim Johnson's presence was deleted from the copy provided Professor Assily.

**185.** Defendant, Kimberly Johnson, who was personally upset with Professor Assily, and who harbors a personal animus against Professor Assily, as aforesaid, took upon herself to perform supervision and surveillance to monitor the First Amendment and academic freedom activity of Professor Assily at her presentation, in further violation of Professor Assily's academic freedom of speech.

**186.** Defendant, Kimberly Johnson, was never disciplined or reprimanded regarding her conduct, but instead, was promoted from Assistant Dean of Learning and Engagement, Eastern Campus, the position she held on January 12, 2021, then later to Interim Assistant Dean of Academic Affairs, and then to Assistant Dean of Academic Affairs, Eastern Campus.

Exhibit B

187.    In addition, Defendant, Kimberly Johnson, on September 28, 2021, was spotlighted as a "TRI-C Famous Employee" in the TRI-C By-Monthly Announcement upon the TR-C Website.

188.    TRI-C's Colloquium Committee commenced planning in the early fall of 2021 for its 18th Annual Faculty Colloquium, to be held on January 11, 2022.

189.    The eight Committee members were and are:

-Michael Wilkins, Co-Chair, Associate Professor  Mathematics, Metro Campus

-Kara DePaul, Co-Chair,Director, Academic Professional Development

-Rebecca Carte, Assistant Professor, Spanish, Metropolitan Campus

-Mardy Chaplin, Assistant Professor, Paralegal Studies, Western Campus

-Sara Fuller, Assistant Professor, English Western Campus

-Brian Hall, Assistant Professor, Metropolitan Campus

-Delia Pfister, Associate Vice-President, Academic Professional Development,

             On Line Learning and Technology, Transfer and Articulation

-Stacey Souther, Professor, Psychology, Eastern Campus


190.    The topic of the Colloquium would be:

            *"Critical Thinking:*    *Its Good For* **You**
                                     *Its Good For* **Me**

191.    Committee announced that it *is pleased to share that the event will once again be virtual, enabling us to invite faculty from higher ed (sic) institutions throughout Ohio to submit a proposal,* which was due Wednesday, October 27, at Noon.

192.    The only direction provided by the Committee to proposed presenters was that

Exhibit B

**Proposals will undergo a "blind" review by the Colloquium Committee based upon the following criteria:**
   1.    **Alignment and relevance to the theme.**
   2.    **Clearly Stated outcomes and description.**

193.    Professor Assily   timely submitted her proposal entitled "De-coddling the American Mind: How Taking Office, Call-Out Culture, and Emotional Reasoning is harming Ourselves and Students" for this upcoming Colloquium which session was described as follows:

**Based on the book "The Coddling of the American Mind" by Greg**

**Lukianoff and Jonathan Haidt, Professor Assily will break down**

**Point by point the Three Great Untruth: "What Doesn't Kill You**

**Makes Yoy Weaker", "Always Trust Your Feelings", and "Life is**

**A Battle Between good and Evil People".  She will offer approaches**

**Based on reliable data that will better equip faculty and students to**

**Respond to what they believe to be 'offensive' language, "micro-**

**Aggression, and a 'we-versus-them mentality' in and outside the**

**Classroom.  **Note: you do not have to read the book to understand**

**What being discussed****

**This session will be key to addressing why our student and faculty**

**Suffer from anxiety, depression, and isolation now more than ever**

**Before. Without critical thinking and the ability to think deeply**

**And meaningfully about life and each other, there is little room for**

**Sound and productive dialogue, finding common ground, and gaining**

Exhibit B

**Truth and wisdom.**

1.    **Disprove the Three Untruths in order to live a healthy and**

      **Stable life.**

2.    **Examine how anxiety and depression are positively correlated to our**

      **Response to life's discomfort and perceived threats.**

3.    **Determine ways to challenge coddling by seeking truth, gaining**

      **Wisdom, and facing our fears and offense with compassion and**

      **Humility.**

**194.**    On Thursday, November 18, 2021, Co-Chair Michael Wilkins, notified Professor

Assily' that after the Committee conducted a "blind review" it was decided not to accept

her proposal, "either it did not meet the proposal criteria, or does not align itself with our

stated theme "Critical Thinking: It's Good For You, It's Good For Me."

**195.**    Professor Assily immediately responded, asking Professor Wilkins for specific

regarding  the committee's decision, and through a series of unsatisfactory answers and

emails, including the email, on November 29, 2021 from Professor Wilkins which

contained, *inter alia,* that:

    "the committee created a "rubric" to evaluate each of the submitted proposals. We

then individually and collectively used that rubric to evaluate to conduct blind reviews on

each of the nearly 50 proposals received. By consistently employing the rubric, we

accepted over 30 proposals while rejecting 16 proposals. Your description, rationale, and

learning objectives **did not clearly or strongly align with our theme..", Your proposal**

**focused on mental health and communicating with others but did not focus on how**

**critical thinking is an essential and crucial skill in mitigating those issues.** Additionally, **we felt that some of the words in the presentation description (e.g., offensive, microaggression) may be PERCEIVED BY SOME COLLOQUIUM PARTICIPANTS AS POLARIZING AND INHIBITING…..it does not align itself with our central theme**…"

196.    The action of the Committee was the continuation of the mission of Defendant, TRI-C to silence, censor, isolate, deprive access to Professor Assily to the academic process, and to destroy her right of academic freedom.

197.    Professor Assily enquired how the so called "blind" review process work when her name was part and parcel of her proposal, but received no elucidation thereof.

198.    This 'Blind' review of the proposals, resulted in the Committee to accept the proposals of four of their very own members:  Co-Chair, Michael Wilkins, Professor of "Mathematics" (1), Mardy Chaplin, Assistant Professor of "Paralegal Studies" (2); Sara fuller Assistant Professor of "English", (1); Brian hall Associate Professor of "English" (2).  A total of six participations.

199.    The **Call For Proposal** restricted the submission of proposals to only  **"faculty from higher ed institutions throughout Ohio",** notwithstanding the Committee accepted and/or permitted seven  "students", nine TRI-C "non-faculty staff", and seventeen external faculty to participate in the presentation of proposals, yet not accepting the proposal of a "Tenured" Professor at TRI-C, because "some words she used "may be perceived" by "some" participants as "polarizing" and "inhibiting" , whatever that means, while accepting six participation by their very own  Committee members in a so called "blind" review.

Exhibit B

**200.**    In addition, the Committee rejected her proposal as "not being 'clearly' and 'strongly' aligned with their theme", a theme of "Critical Thinking" which Professor Assily's Proposal was  spot on.

**201.**    The suggestion of a nebulous, ambiguous, and cryptic reference and the non-disclosure of the protocol of the blind review provided members of the Committee, who not only "self- dealt", but  who may harbored prejudices and biases toward Professor Assily,  to subjectively and arbitrarily deny her Proposal and her voice and speech at the Colloquium which was compulsory for all faculty to attend, for all to hear, and thereby censoring her and denying her First Amendment and academic freedom of speech.

<u>**Damages of Plaintiff, Professor Assily**</u>

**202.**    As a result of the foregoing conduct and actions of Defendants, Plaintiff, Professor Rania Assily suffered specific pecuniary damages for attorney fees and expenses, in excess of $20,000, and is continuing to suffer such pecuniary damages into the indefinite future, to defend and protect her First Amendment Right to freedom of speech, and to redress the breach of a clear duty by Defendants of her protected rights, by contract and otherwise to academic freedom of speech.

**203.**    As a result of the foregoing, Plaintiff suffered the destruction of her professional and academic reputation, the ability to fully exercise and work in her chosen professional field, and the advancement of her chosen career.

**204.**    As a result of the foregoing, Plaintiff suffered and is suffering the silencing of her speech and voice in academia and the right to speak in a publicly funded public and protected forum.

Exhibit B

**205.**    As a result of the foregoing, Plaintiff suffered emotional and attending injuries due to the intentional infliction thereof.

**206.**    As a result of the foregoing, Plaintiff suffered and suffering isolation, minimization, and shunning at TRI-C,  and is unable to function at TRI-C, and her intellectual and professional life at TRI-C, came to a halt, in the toxic and hostile academic world and environment TRI-C.

## CLAIM I.

### (Breach of Contract and Request For Mandatory Injunctive Relief)

**207.**    Plaintiff, Rania Assily, incorporates here in all of the allegations contained in the foregoing paragraphs 1-206, as if same were rewritten herein.

**208.**    Defendant, TRI-C, through its employees and agents, including Defendant, Meghan Estes, breach its contract with Plaintiff, Rania Assily, as aforesaid, and failed to protect and accord to Plaintiff, Rania Assily, her contractual rights, including according to her the contractual protect conduct of academic freedom, and failing to comply with its contractual duty to address Plaintiff, Rania Assily's Complaint filed on May 18, 2021 with Defendant, TRI-C.

**209.**    As a result of the foregoing, Plaintiff, Rania Assily, suffered damages and injuries as set forth above, as is entitled to a judgment for compensatory damages, and injunctive relief as set forth herein.

**210.**    Plaintiff, Rania Assily, hereby request the issuance of a permanent mandatory injunctive relief, ordering (1) Defendant, TRI-C, its Board of Directors, Agents and employees to forthwith commence the investigation of the Complaint of Plaintiff, Rania

Exhibit B

Assily, filed with Ms. Lillian Welch, Vice-President of Human Resources of TRI-C, on

May 18, 2021, (attached hereto as Exhibit K) against Defendants, Alex Johnson, Megan

Estes, Kimberly Johnson, Vincent Briley, Professor Derrick Williams, and Benjamin

Smith; (2) ordering and appointing an independent panel of three investigators, one to be

selected by Plaintiff, one to be selected by TRI-C, and the third to be a constitutional law

professor appointed by the Court; (3) the protocol for the investigation to be as ordered by

the Court according the contract of the parties and the Federal and Ohio state law applicable

thereto; and (4) that the fees and cost of the investigators and the attorney fees incurred by

Plaintiff regarding it, be paid by Defendants, as allocated among the Defendants by the

Court.

## CLAIM II.

**(Damages Against TRI-C For Intentional Deviation From A Clear Constitutional
Duty; For Voluntary and Intentional Disregard Its Known Constitutional Duty;  42
U.S.C. 1983, First Amendment Retaliation; And R.C. Section 3345.0211, et seq.
Violations )**

**211.**    Plaintiff incorporates herein each and every allegation contained paragraphs 1-3,

and 5-206 of this Amended Complaint by reference as if same were rewritten herein,

specifically avers the following to support Plaintiff's independent Claims for the violation

of her rights pursuant to the First Amendment to the U.S. Constitution, as applied to

Defendant, TRI-C, pursuant to the Fourteenth Amendment of the U.S. Constitution, and

violations pursuant to the provisions of R.C. 3345.0211, et seq.

**212.**    The claims asserted herein are independent and standalone claims against

Defendant, TRI-C, which does not arise from and dependent on any collective bargaining

Exhibit B

agreement and is apart from any other claim which may be subject to arbitration pursuant to a collective bargaining agreement and R.C. 4117.

213.   Plaintiff, Professor Assily, avers with respect to Defendant, TRI-C the allegations contained in the above foregoing paragraphs and the following paragraphs:

214.    Defendant, TRI-C, and its employees have a duty to be beacons of intellectual diversity and academic freedom, to be a forum where controversial ideas are discussed and debated, and not to stifle debate by picking sides, not to create a culture that mandates adherence to a specific or limited ideology or thought. (par. 22)

215.    Defendant, TRI-C, has a public and state interest and mission to create and protect an atmosphere of higher education, an intellectual marketplace where unpopular, controversial, and at times, even offensive speech can be expressed, with wide exposure to the robust exchange of ideas which discovers the truth out of multitude of tongues from members of multitude different races, creeds, and ethnicities, and persons of gender; where the professors, members of a learned profession can speak and write of all sorts of topics and in all source of settings, be free from authoritarian selection and institutional censorship or discipline." (par. 23)

216.    Defendant, TRI-C, and its administrative employees and others representing it, have the duty and responsibility to respect and seek to understand the viewpoints of others, though they may not be their own, or may conflict with their core values." (par. 25)

217.    Defendant, Tri-C, and its employees, as an academic institution of higher learning is vested with the duty to create an academic space and forum where different ideas could compete in an atmosphere of spirited tolerance, curiosity, and open mindedness where

students are exposed to competing points of view, free from social conformism and censorship. (par. 27)

**218.** Defendant, Tri-C, and its employees, are vested, by constitutional principles, to protect and safeguard the First Amendment rights of its faculty staff to academic freedom of speech in an atmosphere which fosters a robust debate of issues of public concerns. (par. 28)

**219.** Defendant, TRI-C, as a governmental institution has a high duty to protect the individual professors to be free from state conduct encroaching upon their protected rights by the First Amendment of the United States Constitution, and applied by the Fourteenth Amendment." (para. 24)

**220.** Defendant, Alexander Johnson, is the President and the highest ranking state employee, and administrative Officer of Defendant, Cuyahoga Community College District, who is charged with the highest duty and responsibility of and to foster and protect a culture in conformity with the forgoing principles and the protection of robust debate of issues of public concern. (par. 29)

**221.** Plaintiff avers and believes that Defendant, Alexander Johnson, an African-American, during his tenure as President has created, sponsored,  promoted, and sanctioned an underlying culture at TRI-C which is an  antithesis of the duty of Defendant, TRI-C, to protect academic freedom and the First Amendment rights to free speech, and thereby, thru and with the active support and participation of state employees as set forth herein, including, Defendants, Kimberly Johnson, Vincent Briley, Derrick Williams, Meghan

Estes, and others has violated the  rights of Plaintiff, Professor Assily, and caused damages to Plaintiff, as more specifically set forth herein. (par. 30)

**222.**    Culture of TRI-C during Defendant, Alexander Johnson's, leadership, with  his governmental imprimatur, created and fostered a culture and academic  atmosphere at TRI-C which espoused, promoted and sanctioned  only a one sided, biased and prejudicial point of view  on issues of great  public concern and debate, without opportunity to discuss and debate which created and picked sides, as either you are with us and our thinking, or if you express speech with which we do not agree with, or we claim is offensive, you don't belong at TRI-C,  have no place at TRI-C and should be silenced at  and/or banished from TRI-C. (par. 31)

**223.**    This culture of TRI-C was aggressively advocated by Defendant, Kimberly Johnson, daughter of Defendant, Alexander Johnson, whose desire was to banish Professor Assily from TRI-C, as set forth herein. (par. 32)

**224.**    The current culture of Defendant, TRI-C, created a class which is now akin to what is described as the "New Puritans" (**Exhibit E**) with their biased thinking and censorship, with the attending and consequential damage to members of academia, including to Professor Assily. (par. 33)

**225.**    The current culture, specifically espoused, by the state employees of TRI-C, with the *imprimatur* of Defendant, Alexander Johnson, as more specifically set forth herein, that systemic, structural, or institutional racism, accounts for almost all disparities between races, whether in education achievement, employment rates, income gaps, crime rates and health. Individual behavior, family structure, perverse governmental policies and culture

Exhibit B

have little or nothing to do with such disparities….and to contend otherwise is itself a manifestation of systemic racism. (par. 34)

226.    As a consequence, few are willing or dare to speak out  or to write an alternate or qualified view or nuance "for fear of being labeled racists, getting canceled and/or becoming unemployed." *Peter N. Kirsanow,* an African-American, Commissioner of The United States Commission on Civil Rights, and Member of the National Labor Relations Board. (par. 35)

227.    The culture of Defendant TRI-C,  has a chilling effect upon the exercise of the First Amendment right of free speech, as stated by Dr. Terri Pope, "**civil discourse and varying opinions are not always embraced at the college",** that the "**college's prevailing decision is that we would never say anything that would give the impression of intolerance**", that "**people with conservative values need to 'quietly' demonstrate their values at the community college**", and that "**you are entitled to your own opinions, it is not the opinion of the college".** (par. 115)

228.    Robert Searson, Dean of Learning and Engagement, stated that "**it is hard to have conversations with people who claim 'racism" and that as soon as they are able to tag you as a 'racist" or "white supremacist' they have given permission to the audience not to listen to you anymore**", that "**he was upset that we didn't model what should happen in an educational institution-'having civil discussion'  that "it is better to keep quite during the colloquium-have it on but do something else**" and  "**he acknowledged how the 'other' is silenced".**   (par. 116)

Exhibit B

229.    That  On January 25, 2021, Professor Assily, then being faced with defending an investigation and the attending legal costs, had a telephone conversation with Dean Robert Searson about her predicament when Dean Searson stated to Professor Assily to "**back away, until her tenure was done WE DON'T WANT TO PUT KAREN MILLER AND ALEX JOHNSON IN SUCH A POSITION WHERE THEY FEEL PRESSURE FROM OTHERS THAT IT WEIGHS INTO THEIR DECISION.**" (Emphasis added). (par. 125)

230.    Defendant, Kimberly Johnson, who did not champion free speech, perpetuated  a stereotype of Professor Assily, used aggressive language toward, attacked, and demeaned Professor Assily.

231.    Defendant, Kimberly Johnson, disseminated that  beliefs of Professor Assily "are dangerous",  "they should not be allowed on a college campus".

232.    Defendant, Kimberly Johnson, as Dean of TRI-C, further disseminated and stated about  Professor Assily's beliefs  that  "they were not in line with the 'college's culture and values'", that Professor Assily "didn't belong on campus".

233.    Defendant, Kimberly Johnson, lauded and disseminated as "eloquent" the statements of an outsider, Defendant, Benjamin Smith,  condemning Professor Assily  as daring to "finding the courage to be arrogantly overt about their (her) beliefs"; that Defendant, Kimberly Johnson,  "didn't appreciate her remarks" as a "dean" of an academic institution, TRI-C; and then  as a Dean crying for hours.

234.    Defendant, Kimberly Johnson, disseminated that she  approved one calling Professor Assily  "a racists and a white supremacists'. (par. 135)

235.    Defendant employees, and Defendant, TRI-C, set examples to the public and its invitees, that such conduct exhibited by its employees are acceptable, as then acted out by Defendant, Benjamin Smith, an invitee, who wrote and disseminated through Face Book and other medium "….**in time where conservative white supremacist remained dormant; they are now finding the courage to be arrogantly overt about their beliefs. Rania Assily , a TRI-C history professor, used our session as an opportunity to reach into the bag of already disproven conservative rhetoric in order to shift our messaging to bend toward whiteness rather than injustice"….**and that Professor Assily's beliefs are "**DANGEROUS AND SHOULD NOT BE ALLOWED ON A COLLEGE CAMPUS.** (emphasis added) (par. 88)

236.    Defendant, Benjamin Smith, thereafter, in his Facebook as a Reply to comment wrote and disseminated that  "**Come to find out I think the professor was at the insurrection last week sooo".**  (par. 89)

237. Defendant, Kimberly Johnson, aggressively, intentional and knowingly continue to pursued the  disseminate the libelous and defamatory statements, and Defendant, Kimberly Johnson, within an hour of the Face Book posting, composed and disseminated an email at 5:41 P.M. attaching the post of Defendant, Benjamin Smith, to  Dean Robert Searson, Dean of  Academic Affairs, Westshore Campus, with copies to  Terri Pope, President of the Westshore Campus, Lisa Williams, President of the Eastern Campus, and William Cunion, Dean of Learning And Engagement, Eastern Campus, which the recipients then may have forwarded to others further publishing and spreading it. (para. 90)

Exhibit B

238.    Defendant, Dean Kimberly Johnson, falsely accused Professor Assily of "making some comments that align with the rhetoric of those who believe that African Americans are fundamentally inferior", - that she made "some remarks over voice at the end of the session", that she "engaged aggressively with the presenters", that she said "that African Americans underachieve because they aren't raised by "good people", that she attributed "the impacts of systemic racism to 'poor choices' and 'poor decision making'". (par. 91)

239.    Defendants, Kim Johnson, Derrick Williams, with Defendant, Meghan Estes, immediately commenced an investigation to sanction Plaintiff.

240.    No one in the administration of the Campus, reached out to Plaintiff regarding the conduct of Defendant employees, and the  family members of Defendant, Alexander Johnson, but the college immediately conducted an investigation on the complaint of Kim Johnson, and Derrick Williams, which caused Plaintiff to incur and pay legal fees, and damaged in excess of $20,000.00.

241.    The actions of the employees of Defendant, TRI-C, in pursuing the mission and culture of  TRI-C to rid the college of discourse of which they did not approve, to shun and remove Plaintiff from the college, cause a chilling effect to the exercise of the constitutional right of free speech causing self-censorship to avoid retaliation, on campus, and injury and damage to Plaintiff, Professor Assily.

242.    Even the so called "independent investigators" hired by Defendant, TRI-C, who in a "back handed" way exonerated Professor Assily, but did not condemn in any way the conduct of Defendants, Kim Johnson, and Defendant, Derrick Williams, branded Professor's communication as "poorly worded", "reflected a general naivete" , "in line with

ignorance", and repeated  the accusation of some four unidentified attendees out of close to a hundred, about the claimed "tone"  of Professors remarks as "confrontational", "combative", "harmful", "uncomfortable", "seeming aggressive", "rude", and "unprofessional", all of which was the very topic presented by no other than President Barrack Obama, at a father's day speech.

243.    That the "independent" investigators even recommended that "she (a tenured professor) be provided with appropriate supervisory support to address the "lingering effects" of the situation on the academic Community at the College.

244.    Plaintiff, Rania Assily, avers that, again, the actions of the "investigators" were done to appease the "powers to be" at TRI-C, to be inline with its "culture", and to chill any discord with which is not "comfortable" to them, and which it may not want to accept, regardless of the fact that President Obama agreed with Professor Assily.

245.    Plaintiff, Professor Assily has an independent and viable 42 U.S.C. 1983 claim under the protection of the First Amendment to the U.S. Constitution, against Defendant, Cuyahoga Community College, for the retaliation that was reasonably likely to deter employees from engaging in constitutionally protected speech and that its  adverse conduct of the  investigation and sanctions were substantially  motivated  by the  protected speech of Professor Assily, the goal of which was to prevent or redress actions by the government employer to censure and chill the exercise of protected First Amendment rights, as set forth herein.

246.    Plaintiff believes and therefore avers that Defendant, Alexander Johnson, as the highest ranking decision making officer of Defendant, Cuyahoga Community College,

Exhibit B

knew and participated in, and  approved the commencement of an investigation of Plaintiff upon the request of his daughter, Defendant, Kimberly, Johnson, which constituted adverse conduct.

247.    That the investigation was motivated by a desire to chill and sanction the exercise of Plaintiff right of free speech pursuant to the First Amendment to the U.S. Constitution, and after March 24, 2021, to continue by defendants said investigation in violation of the provisions of R.C. 3345.211, et seq.

248.    Plaintiff, Professor Assily avers that she was treated differently by Defendant, TRI-C, in sharp contrast, to the treatment and accommodation extended to  Defendant, Kimberly Johnson, by the employees of Defendant, Cuyahoga Community College, who within three months was promoted from Interim Assistant Dean of Learning And Engagement to Interim Assistant Dean Of Academic Affairs of Eastern Campus, with a further promotion when the President of TRI-C, Defendant, Alexander Johnson, retired, all with commensurate renumeration; and was designated and lauded as one of TRI-C's "famous Employees", in September, 2021, while ignoring the actions of its administrative staff against Professor Assily, a member of the faculty and campus of Defendant, TRI-C.

249.    The actions, conduct, and the libelous, slanderous, and defamatory statements of Defendants were within the scope of their employment and were calculated to facilitate and promote the accepted culture of the college as promoted by the college, with the *imprimatur* of Alexander Johnson, who created the culture during his tenure as head of the College and to cull out dissent and rid the college of people who espoused ideas contrary to their own.

250.    That Plaintiff's Claim II. asserts rights and seeks redress of Constitutional claims for the wrongful infringement and violation of her First Amendment rights, which are independent of and fall outside the scope of R.C. 4117, and do not arise from, or depend on, any collective bargaining agreement, and a Court of Common Pleas of the State of Ohio has jurisdiction and authority to redress the grievances and to grant relief sought by Plaintiff, Rania Assily, as set forth herein.

251.    Defendant Tri-C through its employees in the course of their employment, intentionally deviated from and disregarded it's known duty to protect the First Amendment rights of Professor Assily, through and by their wrongful acts, including but not limited to slander *per se*, libel *per se*, and defamation with knowledge and appreciation, not only of the likelihood of resulting injury and the destruction to the academic and professional reputation and career of Plaintiff, but also, that they acted with knowledge that their purposeful acts would cause injury and damage which was their intended purpose to align with the culture and business of Defendant, TRI-C, to perpetuate its "culture" by the removal of Professor Assily's voice and presence from TRI-C and from any other academic environment.

252.    The individual Defendant employees of TRI-C, would not have conducted themselves,and continue to conduct themselves as Deans and Administrative officers, and would not have committed and continue the wrongful acts with impunity without the knowledge that they had the full support and acquiescence of the past and present governmental body of TRI-C, and that such conduct was sanctioned by Defendant, Tri-C.

253.    As a result of the foregoing acts and conduct of the Employees of Defendant TRI-C, Defendant, TRI-C, is liable for the injuries and damage suffered by Plaintiff, both compensatory and punitive damages.

## CLAIM III.

**(Claim For Damages, individually and personally, Against Defendants, Kimberly Johnson, Vincent Briley, Derrick Williams, and Meghan Estes)**

254.    Plaintiff incorporates herein by reference each and every allegation contained in the foregoing Claims I and II, as if same were fully rewritten herein.

255.    In addition to the allegation contained in Claim II, herein, the conduct and actions of said Defendants, toward Plaintiff, Rania Assily, severed her employment obligations and duties, and were personally and directly motivated toward Plaintiff, in bad faith, harboring ill will and enmity, to do harm and injury to Plaintiff.

256.    The conduct and actions of said Defendants were reckless, made with a conscious disregard of and indifference to known and obvious risk of harm to Plaintiff and Plaintiff's protected rights made under unreasonable circumstances and culture at TRI-C.

257.    The conduct of said Defendants, as aforesaid, constituted slander, libel and defamation *Per Se* to destroy the academic and professional reputation, and academic career, and the advancement thereof, of Plaintiff.

258.    The conduct of said Defendants constituted an intentional infliction of emotional and other injuries to Plaintiff,

259.    As a result thereof Plaintiff suffered injury and damage, as stated above.

Exhibit B

260.    As a result of said Defendants' conduct and action said Defendants are not protected by governmental immunity and making said Defendants personally liable for compensatory and punitive damages.

## CLAIM IV.

### (Slander, libel and Cyber Defamation Against Defendant, Benjamin Smith)

261.    Plaintiff incorporates herein by reference each and every allegation contained in the foregoing paragraphs 1 through 206 as if they were rewritten herein.

262.    The foregoing conduct and actions of Defendant, Benjamin Smith, constituted libel, slander, and defamation *Per Se*, intentional publishing on the internet throughout the United States, to injure and damage Plaintiff as aforesaid and causing injury and damage to Plaintiff as set forth.

263.    Defendant, Benjamin Smith is liable for an award of compensatory and punitive damages and attorney fees to Plaintiff.

## CLAIM V.

264.    Plaintiff incorporates herein by reference each and every allegation contained in the foregoing Claim IV, as if they were fully rewritten herein.

265.    The foregoing conduct and actions of Defendant, Benjamin Smith, constituted intentional infliction of emotional distress and injury to Plaintiff, as aforesaid, and he is liable for an award of compensatory and punitive damages to Plaintiff, Rania Assily.

**WHEREFORE,** Plaintiff, Rania Assily, demands judgment as follows:

Exhibit B

a.      Against Defendant, Cuyahoga Community College, in Claim I, for compensatory damages in excess of $25,000.00, and mandatory injunction as set forth in Claim I;

b.      Against Defendant, Cuyahoga Community College in Claim II, for compensatory damages, in excess of $25,000.00, and punitive damages as awarded at trial; and mandatory injunctions as set forth and requested in Claim I.

c.      Against Defendants, Kimberly Johnson, Alexander Johnson, Vincent Briley, and Derrick Williams, jointly and severally, in Claim III for compensatory damage, in excess of $25,000.00 and punitive damages as awarded at trial;

d.      Against Defendant, Benjamin Smith, individually, in Claims IV and V, for compensatory damages in excess of $25, 000.00, and punitive damages as awarded at trial.

e.      For an award of attorney fees and litigations costs and expenses;

f.      The costs of this action; and

g.      such other and further relief which may be just in law and equity.

### JURY TRIAL DEMAND

Plaintiff, Rania Assily, demands a trial by jury of all issues triable by a jury.


Respectfully Submitted,

*/s/ Joseph Bancsi*

JOSEPH BANCSI (O.S.Ct. No. 0025450)
West Suburban Office Building, Suite 400
20800 Center Ridge Road
Rocky River, Ohio 44116
Tel:  (216) 406-8177
joseph.bancsi@gmail.com

Attorney for Plaintiff, Rania Assily

Exhibit B

## CERTIFICATE OF SERVICE

Now comes Plaintiff and hereby certifies that the foregoing *Amended Complaint* was filed with the Court through the Court's electronic filing system and that the parties shall receive notice and service of same through said system and may obtain copies of same through said system.

*/s/ Joseph Bancsi*

_____

JOSEPH BANCSI
Attorney For Plaintiff, Rania Assily

Exhibit B